# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| LARRY M. BEASLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-06-S-409-NE |
| | ) | |
| THE BOEING COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Larry Beasley ("plaintiff" or "Beasley"), is a former employee of defendant, The Boeing Company ("defendant" or "Boeing").  He claims that Boeing terminated his employment because of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*  He also claims that his termination was in retaliation for making complaints of age-related discrimination. The case currently is before the court on defendant's motion for summary judgment. Upon consideration of defendant's motion, the parties' briefs, and the evidentiary submissions, the court concludes the motion should be granted.

## PART ONE

### *Standard of Review*

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment always bears the initial responsibility of informing the court, by reference to materials on file, that there are no genuine issues of material fact to be decided at trial. *Id*. at 323; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The moving party discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (*per curiam*). Rule 56 permits the moving party to discharge this burden with or without supporting affidavits. *See Celotex*, 477 U.S. at 324.

When the moving party has discharged its burden, the non-moving party cannot rest upon the pleadings; rather, Fed. R. Civ. P. 56(e) requires the party opposing summary judgment to go beyond the pleadings, and to demonstrate by affidavit or

other appropriate means that there is a genuine issue of material fact for trial.  *See*

*also Celotex*, 477 U.S. at 324; *Jeffery*, 64 F.3d at 593-94.

> In making this determination, the court must review all evidence and
> make all reasonable inferences in favor of the party opposing summary
> judgment.
>
> The mere existence of some factual dispute will not defeat
> summary judgment unless that factual dispute is material to an issue
> affecting the outcome of the case.  The relevant rules of substantive law
> dictate the materiality of a disputed fact.  A genuine issue of material
> fact does not exist unless there is sufficient evidence favoring the
> nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting

*Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v.*

*Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (*en banc*).

**PART TWO**

*Statement of Facts*

**A.**    *Plaintiff's Employment with Boeing*

Plaintiff Larry Beasley first worked for defendant Boeing for a period of

approximately three years between 1966 and 1969.  In February of 1969, plaintiff was

laid off, along with thousands of other employees, when the project he and the other

employees had been working on ended.[1]  Plaintiff reapplied for employment with

---

[1] Doc. no. 17 (defendant's evidentiary submission), Exhibit 1 (Deposition of Larry Beasley),
at 59-63.

Boeing in May of 1990, and he was re-hired as a machinist at Boeing's Huntsville, Alabama, facility, at the age of forty-seven.[2]   Plaintiff transferred to Boeing's Decatur, Alabama, facility in 2002, and remained employed there until his discharge in November of 2004.[3]

**B.**   *Boeing's Policies and Procedures*

Boeing follows a Business Process Instruction policy when disciplining employees.  That policy is designed to assist members of management and Human Resources employees to determine both the severity of any violations of the Boeing Code of Conduct, and the propriety of any proposed corrective action.  Boeing reserves the right to modify the corrective action based on the severity and magnitude of the specific violation.[4]

Each individual Boeing plant also maintains its own localized policies. Plaintiff received training on the Decatur plant's policies and procedures, including Decatur Operating Procedure – Personal Warranty, Decatur Operating Procedure –

---

[2] *Id.* at 64-65, 67; doc. no. 17 (defendant's evidentiary submission), Exhibit 3 (Declaration of Kathleen Ganey), at ¶ 1.  Plaintiff identifies several facts related to an allegedly discriminatory age-based comment made while he was working at the Huntsville facility in 1997, and his subsequent complaint to the Human Resources department.  These facts are relevant only to his retaliation claim, and need not be discussed in this opinion, because plaintiff has abandoned his retaliation claim.  *See* Part Three (A), *infra.*

[3] Ganey Declaration, at ¶ 1.

[4] *Id.* at ¶ 9.

Nonconforming Material, and Detailed Process Instructions.[5] A "Personal Warranty" is an employee's certification or affirmation that work performed is acceptable and in compliance with all relevant requirements, specifications, agreements, instructions, and procedures.[6] Detailed Process Instructions (or "DPI's") convey in detail the work processes, instructions, and requirements for all work performed in the Decatur facility. The Decatur Operating Procedure – Nonconforming Material instructs employees on how to identify and dispose of non-conforming material, or work products that do not conform the company's set standards.[7]

The Decatur facility utilizes a system called "Factory Net," which documents all of the work steps performed on an item produced in the facility. Employees are required to report all non-conformances, or "NCS," on the Factory Net system.[8]

**C.**    *Non-Conformances Caused by Plaintiff's Work*

On October 24, 2003, plaintiff transferred to the position of Production Technician, and began working on the aft skirt and engine sections of a rocket.[9] Other Production Technicians assisted on the engine work, but plaintiff was the only

---

[5] Doc. no. 17 (defendant's evidentiary submission), Exhibit 2 (Declaration of Jacqueline Chadwick), at ¶ 1. *See also* Beasley Deposition, at 95.

[6] Chadwick Declaration, at ¶ 3.

[7] *Id.* at ¶ 2.

[8] *Id.* at ¶ 4. *See also* Beasley Deposition, at 95-96.

[9] Chadwick Declaration, at ¶ 5; Ganey Declaration, at ¶ 2; Beasley Deposition, at 93-94.

Production Technician who worked on the aft skirt.[10]   On May 25 and 26, 2004, plaintiff entered NCS 14491-1 and NCS 14491-2 on the Factory Net system, reflecting non-conformances in the engine section.[11]   Jacqueline Chadwick, plaintiff's immediate supervisor, discussed these mistakes with him, and plaintiff stated that he had been confused about the drawings for the part, but insisted that he did not intend to make a mistake.[12]   Ms. Chadwick stated that she asked plaintiff why he kept creating non-conformances, and whether he needed additional training.   Plaintiff responded that he did not know why he continued to create non-conformances, but he did not need any help because he had not experienced performance problems in the past.   Even so, because plaintiff had created non-conformances on two consecutive days, Chadwick stated she issued him a verbal counseling.   Chadwick also assigned a "buddy" to work with and assist plaintiff.[13]   Plaintiff did not specifically recall these conversations with Chadwick about training, or the verbal counseling, but he stated they could have occurred.[14]   He acknowledged having another individual assigned to work with him, but he did not believe the assignment was a result of his own poor performance.   Instead, plaintiff believed the additional

---

[10] Chadwick Declaration, at ¶ 5; Beasley Deposition, at 100.

[11] Chadwick Declaration, at ¶¶ 6-7.

[12] *Id.*

[13] Chadwick Declaration, at ¶ 8.

[14] Beasley Deposition, at 94-95, 104-05, 122-23.

worker was assigned so that the project could be completed more quickly.[15]

Plaintiff entered another NCS, No. 14800, on the Factory Net System on June 30, 2004, reflecting a non-conformance in the engine section.[16] Chadwick stated that, as a result of this non-conformance, she issued another verbal counseling to plaintiff for poor workmanship or inattention to detail.[17] Plaintiff did not recall receiving a verbal counseling on this occasion.[18]

Plaintiff continued to work on the aft skirt section, and on September 13, 2004, the aft skirt was delivered to the team in charge of its final assembly. The final assembly team refused to accept the aft skirt because it had too many non-conformances, and the aft skirt was returned to plaintiff's department for additional work and repair.[19] Chadwick stated that she issued plaintiff another verbal counseling on September 21, 2004, as a result of the non-conformances found in the aft skirt.[20] Plaintiff did not recall receiving a verbal counseling on this occasion, but he did recall Chadwick telling him there had better be "a good explanation" for the defects, and that plaintiff was "too popular."[21]

---

[15] *Id.* at 119-22.

[16] Chadwick Declaration, at ¶ 9.

[17] *Id.*

[18] Beasley Deposition, at 98-99.

[19] Chadwick Declaration, at ¶ 10. *See also* Beasley Deposition, at 100-01, 113-15.

[20] Chadwick Declaration, at ¶ 10.

[21] Beasley Deposition, at 103, 130-31.

On September 28, 2004, NCS Nos. 16223-1 to 16223-5 were entered on Factory Net, reflecting multiple non-conformances in the aft skirt.[22]  After these non-conformances were discovered, Chadwick removed plaintiff from working on all hardware products and directed him to review and ensure his full understanding of the plant's Detailed Process Instructions.[23]  On October 7, 2004, NCS 16359 was entered on Factory Net, reflecting multiple non-conformances in the engine section.[24]  Plaintiff had not noted these non-conformances on the Factory Net system, nor otherwise identified them.[25]  On October 15, 2004, plaintiff told Chadwick that he had become "a liability rather than an asset" to his work team.[26]  Chadwick then reassigned plaintiff to a position in which he would only be inspecting other people's work.[27]

On October 22, 2004, more non-conformances were entered on Factory Net, reflecting problems with the aft skirt that appeared to have been concealed by a plate. Chadwick questioned plaintiff about whether he had covered up the non-

---

[22] Chadwick Declaration, at ¶ 12.

[23] *Id.*

[24] *Id.* at ¶ 13.

[25] *Id.*

[26] Beasley Deposition, at 125-26.

[27] *Id.* at 105-06; Chadwick Declaration, at ¶ 13.  Chadwick states that plaintiff asked to be moved to the inspection position, because he was not good at his job, and could not perform the work assigned to him.  *Id.*  Claimant, however, does not recall requesting to be moved to the inspector position.  Beasley Deposition, at 105-06.

conformances, and plaintiff denied doing so.  Chadwick then re-emphasized that plaintiff needed to be cautious in his work and to fully understand the Detailed Process Instructions.[28]  On October 25, 2004, Chadwick checked Factory Net and confirmed both that plaintiff had alone performed the work on the aft skirt, and that he had not entered any of the aft skirt's non-conformances on Factory Net.[29] Chadwick then met with plaintiff again to ask why he had not entered the non-conformances noted in NCS 16223-1.  Plaintiff responded that he did not report any non-conformances on the aft skirt because, at the time he performed the work, he did not believe he had made any errors.[30]

Still more non-conformances were discovered on October 25 and 26, reflecting additional problems with the aft skirt.  Plaintiff had not entered these non-conformances on Factory Net.[31]  Subsequently, Chadwick prepared a proposed corrective action for plaintiff, and presented it to Jackie Nesselroad — the Manager for the Assembly and Test Department — for review.  Nesslerod, however, instructed Chadwick to report the issue to the Employee Corrective Action Review Board (the "ECARB" or "Board").[32]  While plaintiff's situation was being reviewed by the

---

[28] Chadwick Declaration, at ¶ 14.

[29] *Id.* at ¶ 15.

[30] *Id.* at ¶ 16.

[31] *Id.* at ¶ 17.

[32] *Id.* at ¶ 18.

ECARB, NCS Nos. 16223-7 through 16223-10 were entered on Factory Net, reflecting numerous non-conformances in the aft skirt.[33]

**D.**   *The ECARB Investigation and Plaintiff's Termination*

The purpose of the ECARB is to recommend appropriate and consistent corrective actions for employees whose conduct is investigated by any department at Boeing for alleged violations of the Ethical Business Conduct, Procurement Integrity, or Security policies.  The ECARB reviews any potentially precedent-setting cases and all cases involving time off from work, job reclassification, or discharge.  The Board's review is intended to ensure consistency with prior actions and compliance with company policies, state and federal laws, agency regulations, and contractual obligations.[34]  The ECARB is comprised of senior-level, non-union employees representing a cross-section of the plant's various functions.  In reviewing a case, the ECARB receives only an employee's job history, including hire date, transfer date, current classification, and disciplinary history.  The review team does not learn the employee's name, race, gender, or age.[35]

Edquna Thompson, an employee in Boeing's Human Resources department,

---

[33] *Id.*

[34] Ganey Declaration, at ¶ 4.

[35] *Id.* at ¶ 5.

served as coordinator of the ECARB's investigation into plaintiff's actions.[36]  During

the course of this investigation, on November 3, 2004, Thompson met with Tony

Garcia and Herb Bryan, who were Quality Engineers, and Mike Savage, who was a

Manufacturing Engineer.[37]   Garcia, who had inspected some of plaintiff's work,

informed Thompson that, during his final walk around on the aft skirt, he did not

notice any major defects.  Although he noticed minor nicks, blemishes, and scratches,

he stamped the unit as ready for transfer to the Final Assembly department.[38]

Thompson showed Bryan some pictures of the non-conformances on the aft skirt, and

Bryan stated that several of them could be considered major defects that should have

been entered on the Factory Net system.[39]  Savage stated that plaintiff could not have

overlooked the non-conformances on the aft skirt because the defects were so

obvious.  Savage also stated that it appeared as if plaintiff had attempted to conceal

several of the non-conformances, and that plaintiff had earlier admitted to feeling "out

of his comfort zone" in his current work assignment.[40]

On November 4, 2004, plaintiff met with Chadwick, Thompson, and Robert

---

[36] *Id.* at ¶ 6.  *See also* doc. no. 17 (defendant's evidentiary submission), Exhibit 4 (Declaration of Edquna Thompson), at ¶ 1.

[37] Thompson Declaration, at ¶ 2.

[38] *Id.* at ¶ 3.

[39] *Id.* at ¶ 4.

[40] *Id.* at ¶ 5.

Kozuch, who served as union steward.  During this meeting, Chadwick again showed plaintiff pictures of all the discovered non-conformances, and again asked him whether he had any knowledge of them.[41]  Plaintiff denied having any knowledge of most of the non-conformances.  With regard to the non-conformances plaintiff did admit knowing about, he acknowledged the workmanship was poor, but stated he would not have intentionally created defective work.[42]

On November 11, 2004, plaintiff saw Kathleen Ganey, the Decatur plant's Senior Manager of Human Resources, who told him not to worry about his job.[43]  At that time, however, the ECARB had not met to discuss plaintiff's situation, and Ganey did not know the extent of the problems with the aft skirt.[44]  Later that day, the ECARB met and unanimously voted to terminate plaintiff's employment.  The voting members of the ECARB were ages sixty-three, fifty-six, forty-seven, and forty-six.  The following day, the decision of the ECARB was implemented, and plaintiff's employment was terminated for the following stated reasons: (1) violating Decatur Operating Procedure – Personal Warranty and Decatur Operating Procedure – Nonconforming Material for failing to report multiple non-conformances; (2)

---

[41] Chadwick Declaration, at ¶ 19; Beasley Deposition, at 137-40.

[42] Chadwick Declaration, at ¶ 20; Beasley Deposition, at 153-56.

[43] Ganey Declaration, at ¶ 7; Beasely Deposition, at 143-44.

[44] Ganey Declaration, at ¶ 7.

engaging in the unauthorized performance of work; and (3) violating Business Process Instruction – 2616, concerning the concealment of work, an offense that plaintiff acknowledges usually results in an employee's discharge.[45]  Plaintiff was sixty-three years old at the time of his termination.

After plaintiff's termination, additional non-conformances continued to surface on plaintiff's work products.  Boeing ultimately determined that plaintiff had created and failed to report hundreds of non-conformances, and that he had attempted to conceal many of the non-conformances that had been discovered.  The repair of plaintiff's work on the aft skirt cost Boeing approximately sixteen thousand dollars and three hundred hours of labor, and resulted in an inspection by the customer, the United States Air Force.[46]

**E.**   *Disciplinary Experiences of Other Boeing Employees*

The ECARB also investigated Tony Garcia, the Quality Engineer who had inspected some of plaintiff's work on the aft skirt.  The ECARB determined that Garcia did not intend to conceal any non-conformances or make any misrepresentations to the company.  Garcia had, however, failed to properly manage his time, which had resulted in his failure to notice some of the non-conformances on

---

[45] *Id.* at ¶ 8; Chadwick Declaration, at ¶ 21.

[46] Chadwick Declaration, at ¶ 24; Ganey Declaration, at ¶ 13.

the aft skirt.  As a result of this failure, Garcia received a verbal counseling.[47]  Ron Fluke, a Production Technician, and Robert Kozuch, the union steward, also had inspected some of plaintiff's work.  The ECARB reviewed their work as well, but found no evidence that Fluke or Kozuch knew or should have known of the non-conformances.[48]  At the time of plaintiff's discharge, Garcia, Fluke, and Kozuch were forty-seven, fifty-six, and forty-seven years old, respectively.[49]

Plaintiff admits that other employees at the Decatur facility — aged twenty-eight, thirty-three, and thirty-eight — have been terminated for poor performance.[50] He also admits that, in the history of the Decatur facility, there has never been an employee who was found to have created and failed to report hundreds of non-conformances, and who attempted to conceal many of the non-conformances.[51] Plaintiff has, however, identified other Boeing employees who have experienced performance problems but were not discharged as a result.

On October 19, 2004, Anthony Locke, a Production Technician, performed

---

[47] Ganey Declaration, at ¶ 10.

[48] *Id.*

[49] *Id.*

[50] Ganey Declaration, at ¶ 11.  *See also* doc. no. 20 (plaintiff's brief), at § I(A) (plaintiff's Response to Defendant's Statement of Facts), failing to dispute the facts set forth in paragraph 11 of Ganey's Declaration.

[51] Ganey Declaration, at ¶ 12.  *See also* doc. no. 20 (plaintiff's brief), at § I(A) (plaintiff's Response to Defendant's Statement of Facts), failing to dispute the facts set forth in paragraph 12 of Ganey's Declaration.

unauthorized work, created one non-conformance, and admitted to concealing it. As a result, he was suspended without pay.[52]  Plaintiff has offered no evidence of Locke's age.[53]  Plaintiff had inspected some of Locke's work without reporting the defects to Boeing, but Boeing determined that plaintiff did not intend to conceal any of Locke's non-conformances or to make any misrepresentations to the company. Therefore, plaintiff was not disciplined as a result of this incident.[54]

In July of 2002, James Slone, a Manager, instructed Greg Jacobs, a Production Technician and one of Slone's subordinates, to perform work without written authorization.  As a result, Slone was suspended without pay, demoted, and transferred to another work area.  Jacobs received a written corrective action.[55] Plaintiff offers no evidence of Slone's and Jacobs' respective ages.[56]

In March of 2002, three Production Technicians — Dale Elledge, Reba Hughes-Orr and Steve Ridaught — damaged a tank during transport.  After an investigation, Boeing determined that the transportation process was flawed, but that

---

[52] Ganey Declaration, at ¶ 17.

[53] In his complaint, plaintiff alleges that Locke was in his late twenties. *See* doc. no. 1 (complaint), at ¶ 11.  However, plaintiff has presented no actual evidence of Locke's age.  The allegations of his complaint are insufficient, standing alone, to prevent the entry of summary judgment. *See also Celotex*, 477 U.S. at 324; *Jeffery*, 64 F.3d at 593-94 (requiring the party opposing summary judgment to "go beyond the pleadings" to demonstrate a genuine issue of material fact).

[54] Ganey Declaration, at ¶ 18.

[55] Ganey Declaration, at ¶ 19.

[56] *See* note 53, *supra.*

the Production Technicians also should have paid more attention to detail. As a result of this incident, Hughes-Orr and Ridaught received verbal warnings. Elledge, who had a prior disciplinary history, received a written warning. Jesse Caddell, their supervisor, received a written warning for failing to give his employees necessary information.[57] Plaintiff has offered no evidence of the respective ages of Hughes-Orr, Ridaught, Elledge, and Caddell.[58]

**F.**   *Unemployment Proceedings Before the Alabama Department of Industrial Relations*

Plaintiff sought unemployment compensation benefits after his discharge from Boeing. He initially was awarded benefits, and Boeing appealed the award to the Alabama Department of Industrial Relations.[59] During a hearing conducted by the Department's Hearings and Appeals Division, plaintiff testified in support of his application, but he never mentioned that he thought Boeing terminated his employment because of his age, or in retaliation for making complaints of age discrimination.[60] The Hearings and Appeals Division upheld the denial of unemployment benefits, because it found plaintiff to have violated a provision of Alabama law requiring "denial of benefits to an individual discharged or removed

---

[57] Ganey Declaration, at ¶ 20.

[58] *See* note 53, *supra.*

[59] Beasley Deposition, at 202-03.

[60] *Id.* at 202-04; Ganey Declaration, at ¶ 23.

from work for committing a dishonest or criminal act in connection with the work or for sabotage or an act endangering the safety of others."[61]  The hearing officer made the following factual findings:

> The claimant worked for the listed employer from July 30, 1990, until November 12, 2004.  He was employed as a production technician. The claimant was discharged as a result of gross misconduct.  The claimant was responsible for making over 200 defects in the production of materials but he failed to inform the employer and this resulted in the final product being rejected or returned to correct these errors.  The claimant was responsible for the work that he did.  He was further required to certify that the work was complete and was correct.  The claimant made numerous errors in his work which were not revealed to the employer.  The total errors made by the claimant numbered in the hundreds.  Many of these errors were obvious to the non-lay person. Some defects were also concealed so that they could not be easily detected.  The claimant had been warned or counselled [sic] concerning his performance but not for concealing defects.[62]

The hearing officer concluded that

> [t]he numerous errors revealed concerning the claimant's employment clearly establish gross negligence.  The number of mistakes is such that even the lay person would reasonably have known that such were occurring.  The claimant's failure to report such and his apparent concealing of such constitutes a dishonest act.  Accordingly, he is subject to a denial of benefits . . . .[63]

---

[61] Beasley Deposition, at Exhibit 10 (Hearing Decision by the Hearings and Appeals Division of the State of Alabama Department of Industrial Relations).  *See* Ala. Code § 25-4-78(3)(a) (1975 & Supp. 2006) (stating that an individual will be disqualified from receiving unemployment benefits if "he was discharged or removed from his work for a dishonest or criminal act committed in connection with his work or for sabotage or an act endangering the safety of others").

[62] Beasley Deposition, Exhibit 10, at 1.

[63] *Id.* at 2.

Plaintiff did not appeal the decision of the Hearings and Appeals Division.[64]

**G.**   *Plaintiff's EEOC Charge and Lawsuit*

Plaintiff submitted a Charge of Discrimination to the Equal Employment Opportunity Commission ("EEOC") on May 11, 2005, alleging that his termination from Boeing was the result of unlawful age discrimination.[65] On December 13, 2005, the EEOC dismissed plaintiff's charge and issued him a notice of his right to sue, stating it was unable to conclude whether the information presented established any legal violation.[66] This suit followed.

PART THREE

*Discussion*

**A.**   *Abandonment of Retaliation Claim*

At the summary judgment stage, plaintiff effectively abandoned his retaliation claim. Plaintiff has offered no response to defendant's well-supported arguments that summary judgment should be granted on that claim. Issues and contentions not raised in a party's brief are deemed abandoned. *See, e.g.*, *Chapman*, 229 F.3d at 1027 ("Parties opposing summary judgment are appropriately charged with the responsibility of marshaling and presenting their evidence before summary judgment

---

[64] Beasley Deposition, at 202-03.

[65] *Id.* at 77-78, and Exhibit 6 (plaintiff's EEOC Charge).

[66] Beasley Deposition, at Exhibit 8 (EEOC Dismissal and Notice of Right to Sue).

is granted, not afterwards."); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (holding that a district court can "properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment") (citing *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 269 (7th Cir. 1986) (holding that a ground not pressed in opposition to a motion for summary judgment is to be treated by the district court as abandoned)).

> In opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him.  There is no burden on the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.  Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.  . . .

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citations and internal quotation marks omitted).

**B.**    *ADEA Claim*

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  The protections of the ADEA extend to those individuals who "are at least 40 years of age but less than 70 years of

age." 29 U.S.C. § 621(a).

Plaintiff claims that Boeing violated the ADEA when it terminated his employment, but he does not claim to have direct evidence of age discrimination. Thus, he must prove his claims with circumstantial evidence, navigating the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981). Under this analysis, plaintiff must first establish a prima facie case of age-based disparate treatment, which creates a presumption of discrimination. To rebut the presumption, Boeing then must articulate a legitimate, nondiscriminatory reason for the disputed employment action. If Boeing does so, the presumption of discrimination drops from the case, and the burden shifts back to plaintiff to show that Boeing's proffered reason is merely a pretext for unlawful discrimination. *See McDonnell Douglas,* 411 U.S. at 802-05; *Burdine,* 450 U.S. at 252-56.

Even assuming that plaintiff could establish a prima facie case of age-based discrimination,[67] his ADEA claim cannot survive summary judgment because he

---

[67] In order to make out a prima facie case for an ADEA violation based upon termination of employment, the plaintiff must show (1) that he was a member of the class of persons protected by the ADEA, that is, individuals between the ages of 40 and 70, (2) that he was discharged, (3) that he was qualified to perform the duties of the job from which he was dismissed, and (4) that a substantially younger person replaced him. *See, e.g.*, *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142 (2000); *Bogle v. Orange County Board of County Commissioners*, 162 F.3d 653, 656-57 (11th Cir. 1998). Defendant argues that plaintiff cannot establish a prima facie case because he cannot show that he was qualified to perform his job, or that he was replaced by a substantially younger individual. *See* doc. no. 16 (defendant's brief), at 23-26. The court need not address these

cannot show that Boeing's proffered legitimate, non-discriminatory reasons for terminating his employment were a mere pretext for age discrimination.  Boeing states that plaintiff was terminated for creating, failing to report, and possibly attempting to conceal hundreds of non-conformances.[68]  To rebut these proffered reasons, plaintiff would have to demonstrate that they are merely a pretext for age discrimination.  Plaintiff cannot succeed by simply disagreeing with, or questioning, defendant's stated reasons.  "Stated somewhat differently, a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where, as here, the reason is one that might motivate a reasonable employer."  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997).  Rather, the plaintiff's burden is that of "cast[ing] sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct' . . . ."  *Id.* at 1538 (quoting *Cooper-Houston v. Southern Railway Co.*, 37 F.3d 603, 605 (11th Cir. 1994)).  The plaintiff shoulders that burden by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered

---

arguments because, even assuming plaintiff could establish a prima facie case, his ADEA claim still would fail.  He has no evidence to rebut defendant's legitimate, non-discriminatory reasons for terminating his employment.

[68] Doc. no. 16, at 26.

legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs*, 106 F.3d at 1538 (quoting *Sheridan v. E.I. duPont de Nemours & Company*, 100 F.3d 1061, 1072 (3d Cir. 1996)) (internal quotation marks omitted).

Plaintiff argues that Boeing's more lenient disciplinary treatment of younger employees demonstrates that its proffered legitimate, non-discriminatory reasons are false, and that it actually was motivated by age-based discrimination. Specifically, plaintiff identifies Anthony Locke, James Sloane, Dale Elledge, Reba Hughes-Orr, and Steve Ridaught as his alleged comparators. Locke performed unauthorized work, created a single non-conformance, and admitted to concealing it. He was suspended without pay. Slone instructed a subordinate employee to perform unauthorized work, and he was suspended without pay, demoted, and transferred to another work area. Elledge, Hughes-Orr, and Ridaught damaged a piece of equipment. After Boeing determined the damage was partially due to circumstances beyond these employees' control, it issued them verbal and written warnings.

Importantly, plaintiff has produced no evidence of the respective ages of any of these alleged comparators. Therefore, the allegedly more lenient treatment they received cannot be considered evidence of age-based discrimination. *See Howard v. BP Oil Co., Inc*., 32 F.3d 520, 526 (11th Cir. 1994) (summary judgment is proper where the plaintiff fails to produce evidence to discredit the defendant's explanation

of its action).

Further, even if plaintiff *had* produced evidence that his alleged comparators were substantially younger than he, the alleged comparators were not sufficiently similar to plaintiff for the more lenient treatment they received to demonstrate an age-based discriminatory motive.  The Eleventh Circuit requires that "the quantity and quality of the comparator's misconduct be *nearly identical* to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."  *Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999) (citing *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989)) (emphasis supplied).  Thus, plaintiff must show that younger employees were found guilty of the same or "nearly identical" misconduct, yet were disciplined in different ways. *Maniccia,* 171 F.3d at1369.  Where there are clear differences in either the *quantity* or *quality* of the acts of misconduct committed by the plaintiff and his alleged comparators, it cannot be said that they are "nearly identical."  *Cf. Silvera v. Orange County School Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001) ("[A]lthough Silvera and Ritter have in common the fact that they were arrested in the 1970's . . . Silvera has three additional arrests . . . .  The fact that Silvera had multiple arrests is by itself sufficient to establish that he is not similarly situated to Ritter."); *see also Maniccia*, 171 F.3d at 1368-69 (holding that a female plaintiff in a Title VII sex discrimination

case was not similarly situated to male employees who each committed a single policy violation, whereas the female plaintiff had committed at least four policy violations).   It is true that plaintiff's alleged comparators suffered performance problems related to workmanship, and that none of them were terminated as a result. Even so, all of the alleged comparators were disciplined for a *single* incident, not for creating, failing to report, and possibly attempting to conceal *hundreds* of non-conformances, as was plaintiff.  *See, e.g., Jones v. Bessemer Carraway Medical Ctr.*, 137 F.3d 1206, 1312-13 (11th Cir. 1998) (holding that employees who allegedly committed one act of misconduct were not similarly situated to the plaintiff, who engaged in multiple instances of misconduct in the same day).

Plaintiff has no other evidence of age-based discrimination.  As defendant points out, plaintiff was forty-seven years old — well above the threshold age for ADEA coverage — when he was re-hired by Boeing in 1990.  Further, the members of the ECARB who voted to terminate plaintiff's employment were sixty-three, fifty-six, forty-seven, and forty-six years of age, respectively.  These facts suggest that Boeing did not discriminate against plaintiff because of his age.  *See Elrod v. Sears, Roebuck and Co.,* 939 F.2d 1466, 1471 (11th Cir. 1991) (stating that the plaintiff faced "a difficult burden" of proof because "all of the primary players behind his termination . . . were well over age forty and within the class of persons protected by

the ADEA").  Accordingly, he has no evidence to support a claim under the ADEA, and summary judgment is due to be granted in defendant's favor on that claim.[69]

## PART FOUR

### *Conclusion and Order*

In accordance with the foregoing, the court finds there are no genuine issues of material fact, and defendant is entitled to judgment as a matter of law. Accordingly, defendant's motion for summary judgment is GRANTED, and all of plaintiff's claims are DISMISSED with prejudice.  The clerk is directed to close this file.

DONE this 10th day of July, 2007.

_____
United States District Judge

---

[69] Defendant also argues that plaintiff is estopped from asserting that he was terminated as a result of age discrimination because he did not raise such an argument before the State of Alabama Department of Industrial Relations Hearings and Appeals Division during the hearing on his claim for unemployment benefits.  *See* doc. no. 16, at 28-29.  The court need not consider this argument, because summary judgment is due to be granted on other grounds.